# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DISTRICT

| | |
|---|---|
| **TYLER MUDRICH,** on behalf of himself and others similarly situated, : : | |
| **Plaintiff**, : : | CASE NO. 2:21-cv-4932 |
| v. : : | JUDGE |
| **THE SYGMA NETWORK, INC.**, c/o Corporation Service Company 50 West Broad Street, Suite 1330 Columbus, OH 43215 : : : : : : | MAGISTRATE JUDGE  **JURY DEMAND ENDORSED HEREON** |
| **Defendant**. : | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND OHIO LAW

Now comes Plaintiff Tyler Mudrich ("Named Plaintiff" or "Mudrich"), by and through undersigned counsel, individually and on behalf of other members of the general public similarly situated, for his Collective and Class Action Complaint against Defendant SYGMA Network, Inc. ("SYGMA" or "Defendant") for its failure to pay employees overtime wages and seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("the Ohio Wage Act"); the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15; and Article II, Section 34a of the Ohio Constitution (the Ohio Wage Act, the OPPA, and Article II, Section 34a of the Constitution will be referred to collectively as "the Ohio Acts"). Named Plaintiff's FLSA claims are asserted as a collective action pursuant to 29 U.S.C. § 216(b), while the Ohio Acts claims are asserted as a class action under Federal Rule of Civil Procedure 23. The following collective and class action allegations are based on personal knowledge as to the Named Plaintiff's own conduct and are made

on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FLSA, 29 U.S.C. § 216(b).

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Ohio (the Ohio Acts) over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy. Further, Defendant's principal place of business is located in the Southern District of Ohio. Moreover, Defendant purposefully availed itself of this Court's jurisdiction and venue when it elected to operate and/or control the daily activities and terms and conditions of employment of Named Plaintiff and others similarly situated (as outlined more fully below).

3. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to their claims occurred in the Southern District of Ohio and Defendant's principal place of business is in this Court's District and Division.

## II. PARTIES

### A. Named Plaintiff

4. Named Plaintiff is an individual, a United States citizen, and a resident of this judicial district.

5. Named Plaintiff worked as an hourly, non-exempt "employee" of Defendant as defined in the FLSA and the Ohio Acts primarily in the position of warehouse associate as a selector from approximately December 2019 to the present.

6. At all times relevant, Named Plaintiff primarily performs/performed non-exempt duties for Defendant, including hand-building pallets of product and loading product onto trailers according to established standard, at their facility located in Columbus, Ohio.

7. Named Plaintiff's Consent to Join form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

   **B.     Defendant**

8. At all times relevant, SYGMA is a foreign for-profit corporation authorized to do business in Ohio.

9. SYGMA is a subsidiary of Sysco and is a leading foodservice supplier that specializes in serving large, national restaurant chains throughout the United States.

10. Upon information and belief, SYGMA's corporate office is located at 5550 Blazer Pkwy., Suite 300, Dublin, Ohio 43017; SYGMA has one (1) Ohio warehouse facility located at 2400 Harrison Road, Columbus, Ohio 43204; and SYGMA has approximately fourteen (14) other facilities located throughout the United States, including the states of California, Oregon, Colorado, Texas, Oklahoma, Missouri, Illinois, Michigan, Florida, North Carolina, and Pennsylvania.[1]

11. At all times relevant, SYGMA was an "employer" as that term is defined by the FLSA and the Ohio Acts due to its employment of Named Plaintiff and those similarly situated as described herein.

12. Defendant constitutes an "employer" of Named Plaintiff and others similarly situated as defined by the FLSA and the Ohio Acts.

---

[1] https://www.sygmanetwork.com/Contact.html (last visited on Oct. 1, 2021)

13. At all relevant times, Defendant has controlled the terms and conditions of employment for Named Plaintiff and others similarly situated. In so doing, Defendant is responsible for the human resources decision-making processes, including material terms and conditions of employment and other human resource operations, for Named Plaintiff and those similarly situated.

14. At all relevant times, Defendant has had direct or indirect control and authority over Named Plaintiff's and other similarly situated employees' working conditions, including matters governing the essential terms and conditions of their employment. At all relevant times, Defendant exercised that authority and control over Named Plaintiff and other similarly situated employees.

15. At all relevant times, Defendant has had the authority to hire and fire employees, supervise and control the work schedules and work conditions of employees, determine the rate and method of pay, and/or maintain employee records.

16. Upon information and belief, Defendant applied or caused to be applied substantially the same employment policies, practices, and procedures to all employees at all of its locations, including policies, practices and procedures relating to the payment of wages, overtime, and timekeeping.

17. At all relevant times, Defendant suffered or permitted Named Plaintiff and other similarly situated employees to work. The work that Named Plaintiff and other similarly situated employees performed was for Defendant's benefit.

18. During relevant times, SYGMA maintained control, oversight, and direction over Named Plaintiff and other similarly situated employees, including the promulgation and enforcement of policies affecting the payment of wages and overtime.

19. During relevant times, SYGMA benefitted from the work performed by Named Plaintiff and those similarly situated.

20. Upon information and belief, SYGMA operates and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and SYGMA has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

21. Upon information and belief, Defendant applies or causes to be applied substantially the same employment policies, practices, and procedures to all employees at all of their entities/locations, including policies, practices and procedures relating to payment of and compliance with the FLSA and Ohio law (as applicable), including overtime wages, timekeeping, maintenance of records, etc.

22. Defendant has been and continue to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

23. Upon information and belief, Defendant, at all times relevant hereto, was fully aware of the fact that it was legally required to comply with the wage and overtime laws of the United States and of the State of Ohio.

## III. FACTS

### A. Unpaid Overtime Due to Pre-Shift Donning of Personal Protective Equipment

24. Defendant has a policy and/or practice whereby it require its employees, including Named Plaintiff and other similarly situated employees, to arrive to the facility prior to the start of

their scheduled shifts in order to don certain personal protective equipment ("PPE"), gather their equipment for the day, and engage in other pre-shift job duties.

25. Specifically, Named Plaintiff and similarly situated employees when instructed by Defendant to arrive at the facility approximately thirty (30) or more minutes prior to the start of their scheduled shift in order to engage in pre-shift duties so they were completely ready to begin productive work immediately after the pre-shift meeting concluded.

26. Defendant required Named Plaintiff and similarly situated employees to (1) go to the warehouse floor and locate a jack for their day's work; (2) walk to a separate area of the warehouse to obtain their wearable computer ("wearable"), which is worn on the employee's wrist to track time spent on assignments for productivity reporting and to provide instructions for the day's work; (3) walk to find a printer and batteries for the wearable; (4) walk to the locker room and don PPE, the wearable, the wearable printer ("printer"), and jacket that are all stored in locker rooms at Defendant's facilities; (5) log in to the wearable computer system and necessary software programs; and (6) leave the locker room, walk to the location of the morning meeting, and then clock in for work. Defendant requires Named Plaintiff and similarly situated employees to gather this equipment and don this PPE to perform their job duties.

27. Defendant conducts a morning meeting. Defendant requires Named Plaintiff and similarly situated employees to have their jack, have their wearable, and be fully dressed prior to the start of the morning and before they have clocked in to work. If Named Plaintiff and similarly situated employees did not complete their pre-shift job duties prior to the start of the morning meeting and were unable to immediately begin productive work as a result, Defendant would dock the time it took for them to get ready for work from their compensable hours worked that day.

28. The donning of PPE, gathering of equipment, and logging in to the wearable computer system are completed by Named Plaintiff and other similarly situated employees prior to clocking in for the workday.

### B. Unpaid Overtime as a Result of Interrupted Meal Periods for Donning/Doffing PPE and Engaging in Substantive Work Duties

29. Once clocked in, Named Plaintiff and similarly situated employees continued working at all times with the exception of several breaks, including an unpaid thirty (30) minute meal break.

30. Defendant requires Named Plaintiff and other similarly situated employees to clock in and out of work for their 30-minute meal break; however, Defendant maintains a policy and/or practice whereby they deduct a full thirty (30) minutes from Named Plaintiff and other similarly situated employees' daily hours worked whether they clock out for a full thirty (30) minutes or not. However, Named Plaintiff and other similarly situated employees did not receive a bona fide meal period for several reasons.

31. First, Named Plaintiff and other similarly situated employees' meal breaks begin when they clock out at the timeclock, at which point they then spend time walking back to the locker rooms to doff their PPE; afterward, they walk to the break room where they can begin their meal break.

32. After an already shortened meal break, Named Plaintiff and other similarly situated employees must also end their meal breaks early to return to locker rooms to again don their PPE and walk back to their posts because Defendant required them to fully return from lunch within thirty (30) minutes of the start of the meal break.

33. Consequently, Named Plaintiff and other similarly situated employees do not receive a fully uninterrupted, bona fide meal period of thirty (30) minutes. Nevertheless, Named Plaintiff and other similarly situated employees are not paid for a full 30-minute daily meal break.

34. Second, at times, Named Plaintiff and other similarly situated employees have their already shortened meal breaks interrupted with job duties. For example, supervisors may request Named Plaintiff and other similarly situated employees to stop their meal break and help find a missing pallet or engage in other substantive job duties.

35. Defendant's application of a 30-minute meal break when Named Plaintiff and other similarly situated employees do not receive an uninterrupted 30-minute meal break violates the FLSA because the breaks do not constitute a bona fide meal period. Named Plaintiff and other similarly situated employees perform compensable work up to and including the doffing of their PPE at the beginning of their meal break and beginning compensable work upon donning the PPE after their shortened meal break. In other words, Named Plaintiff and other similarly situated employees' meal breaks are bookended by work for which they are not compensated in violation of the FLSA.

36. Further, Named Plaintiff and other similarly situated employees have their meal breaks interrupted with job duties and have a 30-minute meal break applied to their compensable hours worked when they are clocked out for fewer than thirty (30) minutes.

**C.** **Unpaid Overtime for Post-Shift Doffing of PPE after Clocking Out**

37. After returning to their posts following their shortened meal period, Named Plaintiff and similarly situated employees continued performing their job responsibilities on the warehouse floor, except when they took any additional non-meal breaks, until they clocked out.

38. Named Plaintiff and other similarly situated employees clocked out of work at or near the end of their scheduled shift.

39. Once clocked out, Named Plaintiff and other similarly situated employees then proceeded to the locker room where they dress down; remove their wearable; and take their wearable, batteries, and printer back to the charging station before departing the premises.

40. Named Plaintiff and other similarly situated employees are not compensated for this post-shift work. The wearable, batteries, and printer are pieces of equipment necessary for Named Plaintiff and other similarly situated employees to perform their job duties. Thus, removing these pieces of equipment and placing them in the charging station to recharge for the next shift of employees is integral and indispensable to performing their job duties. If Named Plaintiff and other similarly situated employees did not doff this equipment and return it to its proper location, incoming employees would be unable to perform their job duties.

41. As set forth herein, Defendant arbitrarily failed to compensate Named Plaintiff and other similarly situated employees for all overtime hours worked as a result of: (1) the pre-shift off-the-work donning of required PPE and gathering of equipment; (2) applying a 30-minute meal break deduction when employees are unable to take a full 30-minute bona fide meal break; and (3) work performed after the scheduled end of employees' shifts, including off-the-clock doffing of PPE and returning of equipment.

42. Named Plaintiff and other similarly situated employees performed the preceding unpaid work every workday that should have been properly classified as part of their regular working time. This integral and indispensable unpaid work performed by Named Plaintiff and other similarly situated employees was practically ascertainable to Defendant.

43. There was no practical administrative difficulty of recording this integral and indispensable unpaid work performed by Named Plaintiff and other similarly situated employees.

44. This unpaid work performed by Named Plaintiff and other similarly situated employees constituted part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

45. Moreover, this unpaid work was an integral and indispensable part of other principal activities performed by Named Plaintiff and other similarly situated employees and was part of their continuous workday.

46. Defendant knowingly and willfully failed to pay Named Plaintiff and other similarly situated employees as described herein.

47. Upon information and belief, for the three (3) years preceding the Complaint, Defendant applied the same pay practices and policies to all hourly, non-exempt employees at their facilities, including Named Plaintiff.

48. Defendant is in possession and control of necessary documents and information from which Named Plaintiff and other similarly situated employees would likely be able to calculate their damages. Upon information and belief, Defendant failed to record the necessary and required information to determine all of the time that Named Plaintiff and other similarly situated employees spent working.

## IV. FLSA COLLECTIVE ALLEGATIONS

49. Named Plaintiff brings his FLSA claims pursuant to Section 216(b) as a representative collective action on behalf of himself and all other similarly situated employees of the opt-in class. The FLSA collective consists of the following:

> All current and former hourly, non-exempt warehouse employees of SYGMA who worked at least forty (40) hours in any workweek

during the three (3) years preceding the filing of this Complaint and continuing through the final disposition of this case ("FLSA Collective" or "FLSA Collective Members").

50. Named Plaintiff and putative FLSA Collective Members were all subject to the same policies or practices described above, which resulted in unpaid overtime.

51. During some or all of the last three (3) years, Defendant did not compensate Named Plaintiff and the putative FLSA Collective Members for time spent performing substantial duties for Defendant's benefit.

## V. RULE 23 ALLEGATIONS

52. Named Plaintiff brings his Ohio Wage Act claims pursuant to Rule 23 as a class action on behalf of himself and all other members of the following class:

> All current and former hourly, non-exempt warehouse employees of SYGMA who worked at least forty (40) hours in any workweek during the two (2) years preceding the filing of this Complaint and continuing through the final disposition of this case ("Ohio Rule 23 Class" or "Ohio Rule 23 Class Members").

53. The Ohio Rule 23 Class includes all current or former hourly, non-exempt warehouse employees employed by Defendant throughout the State of Ohio as defined above.

54. The Ohio Rule 23 Class, as defined above, is so numerous that joinder of all members is impracticable.

55. Named Plaintiff is a member of the Ohio Rule 23 Class, and his claim for unpaid wages is typical of the claims of other members of the Ohio Rule 23 Class.

56. Named Plaintiff will fairly and adequately represent the Ohio Rule 23 Class and the interests of all members of the Ohio Rule 23 Class.

57. Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the Rule 23 Class that he has undertaken to represent.

58. Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Rule 23 Class.

59. Questions of law and fact are common to the Ohio Rule 23 Class.

60. Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to their non-exempt employees.

61. Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Ohio Rule 23 Class, making appropriate declaratory and injunctive relief with respect to Named Plaintiff and the Ohio Rule 23 Class as a whole.

62. Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the Ohio Rule 23 Class predominate over questions affecting individual members of the Ohio Rule 23 Class, and a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

63. Questions of law and fact that are common to the Ohio Rule 23 Class include, but are not limited to: (a) whether Defendant violated the Ohio Wage Act by failing to pay the Ohio Rule 23 Class for hours worked in excess of forty (40) hours per week because of the applied meal break deductions; (b) whether Defendant kept accurate records of the amount of time the Ohio Rule 23 Class was working each day; (c) whether Defendant's violations of the Ohio Wage Act were knowing and willful; (d) what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Named Plaintiff and other members of the Ohio Rule 23 Class on account of Defendant's violations of the Ohio Acts; and (e) what amount of prejudgment

interest is due to Ohio Rule 23 Class members for overtime or other compensation that was withheld or not paid to them.

64. A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. Because the damages sustained by individual members are modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against the Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME

65. All of the preceding paragraphs are realleged as if fully rewritten herein.

66. This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and the FLSA Collective.

67. The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per workweek. 29 U.S.C. § 207(a)(1).

68. During the three (3) years preceding the filing of this Complaint, Defendant employed Named Plaintiff and the FLSA Collective Members.

69. Named Plaintiff and the FLSA Collective Members were paid on an hourly basis and worked in non-exempt positions.

70. Named Plaintiff and the FLSA Collective Members regularly worked forty (40) or more hours in given workweeks.

71. Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective Members by, *inter alia*, failing to pay overtime for all hours worked over forty (40) hours in a workweek because of Defendant's policies and or practices described herein.

72. Named Plaintiff and the FLSA Collective Members were not exempt from receiving FLSA overtime benefits.

73. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the FLSA Collective Members are entitled.

74. The exact total amount of compensation, including overtime compensation, that Defendant have failed to pay Named Plaintiff and the FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

75. As a direct and proximate result of Defendant's conduct, Named Plaintiff and the FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of himself and the FLSA Collective Members.

**SECOND CAUSE OF ACTION:**
**R.C. § 4111.03 — RULE 23 CLASS ACTION FOR UNPAID OVERTIME**

76. All of the preceding paragraphs are realleged as if fully rewritten herein.

77. This claim is brought under Ohio Law.

78. Named Plaintiff and the Ohio Rule 23 Class Members have been employed by Defendant, and Defendant is an employer covered by the overtime requirements under Ohio Law.

79. The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" (1.5x) the employee's regular rate of pay for all hours worked

over forty (40) in one workweek "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); 29 U.S.C. § 207(a)(1).

80. Named Plaintiff and the Ohio Rule 23 Class Members worked in excess of the maximum weekly hours permitted under Section 4111.03 but were not paid overtime wages for all of such time spent working.

81. Defendant's policies and/or practices described herein impermissibly reduced Named Plaintiff's and the Rule 23 Class Members' compensable hours worked and resulted in unpaid overtime.

82. Named Plaintiff and the Ohio Rule 23 Class Members were not exempt from the wage protections of the Ohio Wage Act.

83. Defendant's repeated and knowing failures to pay overtime wages to Named Plaintiff and the Ohio Rule 23 Class members were violations of Section 4111.03, and, as such, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the Ohio Rule 23 Class Members were entitled.

84. For Defendant's violations of Section 4111.03, by which Named Plaintiff and the Ohio Rule 23 Class Members have suffered and continue to suffer damages, Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of himself and the Rule 23 Class Members.

**THIRD CAUSE OF ACTION:**
**R.C. § 4113.15 — RULE 23 CLASS ACTION FOR OPPA VIOLATION**

85. All of the preceding paragraphs are realleged as if fully rewritten herein.

86. Named Plaintiff and the Ohio Rule 23 Class Members were employed by Defendant.

87. During all relevant times, Defendant was an entity covered by the OPPA, and Named Plaintiff and the Ohio Rule 23 Class Members have been employed by Defendant within the meaning of the OPPA.

88. The OPPA requires Defendant to timely pay Named Plaintiff and the Ohio Rule 23 Class Members all wages, including unpaid overtime, in accordance with Section 4113.15(A).

89. During relevant times, Named Plaintiff and the Ohio Rule 23 Class Members were not paid all wages, including overtime wages at one-and-one-half times their regular rate, within thirty (30) days of performing the work. *See* R.C. § 4113.15(B).

90. Named Plaintiff's and the Ohio Rule 23 Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

91. In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

## FOURTH CAUSE OF ACTION:
### RECORDKEEPING VIOLATIONS OF THE OHIO WAGE ACT

92. All of the preceding paragraphs are realleged as if fully rewritten herein.

93. The Ohio Wage Act requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek. *See* O.R.C. § 4111.08; 29 C.F.R. §§ 516.2, *et seq*.

94. During times material to this complaint, Defendant was a covered employer and was required to comply with the Ohio Wage Act's mandates.

95. Named Plaintiff and the Ohio Rule 23 Class Members were covered employees entitled to the protection of the Ohio Wage Act.

96. During times material to this complaint, Defendant violated the Ohio Wage Act with respect to Named Plaintiff and the Ohio Rule 23 Class Members by failing to properly

maintain accurate records of all hours Named Plaintiff and the Rule 23 Class Members worked each workday and within each workweek.

97. In violating the Ohio Wage Act, Defendant acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant for an Order:

A. Certifying the proposed FLSA collective action;

B. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

C. Certifying the proposed Rule 23 Class under the Ohio Acts;

D. Finding Defendant failed to keep accurate records, and, as such, Named Plaintiff, the FLSA Collective Members, and the Ohio Rule 23 Class Members are entitled to prove their hours worked with reasonable estimates;

E. Awarding to Named Plaintiff and the FLSA Collective Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

F. Awarding to Named Plaintiff and the Ohio Rule 23 Class Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the Ohio Wage Act;

G. Awarding judgment against Defendant for liquidated damages pursuant to the OPPA in the greater amount of $200 per violation or six percent (6%) of all unpaid overtime

compensation owed to the Named Plaintiff and the Ohio Rule 23 Class Members during the applicable statutory period;

      H.      Awarding Named Plaintiff, Opt-In Plaintiff, the FLSA Collective Members, and the Ohio Rule 23 Class Members costs, disbursements, and reasonable allowances for fees of counsel and experts as well as reimbursement of expenses;

      I.      Awarding Named Plaintiff, Opt-In Plaintiff, the FLSA Collective Members, and the Ohio Rule 23 Class Members such other and further relief as the Court deems just and proper;

      J.      Issuing an injunction prohibiting Defendant from engaging in present, ongoing, and future violations of the FLSA and the Ohio Wage Act;

      K.      Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

      L.      Rendering a judgment against Defendant for all damage, relief, or any other recovery whatsoever;

      M.      Directing Defendant to pay reasonable attorneys' fees and all costs connected with this action; and

      N.      Granting such other and further relief as to this Court may deem necessary, just, and proper.

      Respectfully submitted,

      **COFFMAN LEGAL, LLC**

      */s/ Matthew J.P. Coffman*
      Matthew J.P. Coffman (0085586)
      Adam C. Gedling (0085256)
      Kelsie N. Hendren (100041)
      1550 Old Henderson Rd
      Suite #126

>Columbus, Ohio 43220
>Phone: 614-949-1181
>Fax: 614-386-9964
>Email: mcoffman@mcoffmanlegal.com
>   agedling@mcoffmanlegal.com
>   khendren@mcoffmanlegal.com
>
>*Attorneys for Named Plaintiff and those similarly situated*

## JURY DEMAND

Named Plaintiff requests a trial by a jury of eight (8) persons.

>*/s/ Matthew J.P. Coffman*
>Matthew J.P. Coffman