UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TYLER MUDRICH,** on behalf of themselves
and others similarly situated,

          **Plaintiff,**

v.                                 Case No. 2:21-cv-4932
                                    JUDGE EDMUND A. SARGUS, JR.
                                    Magistrate Judge Chelsey M. Vascura

**THE SYGMA NETWORK, INC.,**

          **Defendant.**

## OPINION AND ORDER

This matter arises on Named Plaintiff Tyler Mudrich's[1] ("Plaintiff") Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) (the "Motion for Conditional Certification" or "conditional certification motion") (ECF No. 16), which contains (1) Plaintiff's proposed discovery and notice distribution plans (*id.* at PageID #128) and (2) Plaintiff's proposed Notice and Consent forms (Pl.'s Ex.'s A-B, ECF No. 16-1). For the reasons stated herein, Plaintiff's conditional certification motion is **GRANTED IN PART** and **DENIED IN PART**, and his proposed discovery plan, notice distribution plan, and Notice and Consent forms are **CONDITIONALLY APPROVED**.

I.

    **A. Background**

Defendant The Sygma Network, Inc. ("Sygma"), a subsidiary of Sysco Corporation, is a "nationwide distributor of food and grocery products" that maintains its central office in Dublin,

---

[1] Since the filing of his complaint, Mr. Mudrich has unfortunately passed away, and an amended complaint adding (former) opt-in plaintiff Michael Morrow has been filed (ECF Nos. 26, 32.) There is no indication that this amended complaint in any way moots or vitiates the instant motion.

1

Ohio. (*See* Def.'s Answer, ECF No. 9 at ¶ 10.) To date, it operates at least fourteen distribution warehouses across the country,[2] one of which is located in Columbus, Ohio. (*Id.*)

Plaintiff was employed as an hourly, non-exempt "selector" in Sygma's Columbus-based warehouse from December 2019 to approximately June 2022. (Declaration of Tyler Mudrich ("Mudrich Decl."), Pl.'s Ex. B, ECF No. 16-2.) Part of (if not all) of his job required him to work on Sygma's warehouse floor, and, consequentially, "wear certain personal protective equipment," or "PPE." (*Id.* at ¶¶ 3-5.) According to Plaintiff, both he and his fellow "warehouse associates" were "instructed" by Sygma to arrive to work "at least thirty (30) minutes before the scheduled starts of [their] shifts" to don their PPE, gather necessary equipment (*e.g.*, a "jack" and "wearable computer"), and execute various other "pre-shift" job duties. (*Id.* at ¶¶ 6-7.) Only after this period, he avers, did they clock in for their shift. (*Id.* at ¶ 7.)

By mid-day, Plaintiff alleges that Sygma consistently required "warehouse associates" at his facility to clock out for a "daily 30-minute meal break." (*Id.* at ¶ 15.) But due to the rigors of "donning" and "doffing" their equipment, as well as various other job-related duties, Plaintiff contends they were often unable to take the full break period. (*Id.* at ¶¶ 16-17.) At the conclusion of their shift, Plaintiff alleges he and his colleagues regularly "doffed" their gear for a second time, but only after clocking out. (*Id.* at ¶ 13.)

**B. Plaintiff's FLSA Claim and Motion for Conditional Certification**

Plaintiff contends that Sygma, by virtue of its "donning/doffing" and "daily meal break" policies, regularly failed to compensate both he and his colleagues "for all hours worked over forty (40) hours in a workweek." (Compl., ECF No. 1 at ¶ 71.) On that basis, he now brings, among

---

[2] Plaintiff alleges that Sygma has fifteen distribution facilities located across the country. (Compl., ECF No. 1 at ¶ 10.) Sygma does not dispute this, but notes that one of its facilities—that located in Newnan, Georgia—closed in July 2019. (ECF No. 22 at PageID #219.)

other claims, a collective action against Sygma arising under § 207(a)(1) of the Fair Labor Standards Act (the "FLSA"). (*Id.* at ¶¶ 65-75.) At this point, at least fifteen other former or current Sygma employees have opted-in to Plaintiff's suit (the "Opt-In Plaintiffs").[3] (*See* ECF Nos. 16, 19, 20, 21, 25.)

At issue is Plaintiff's pending Motion for Conditional Certification, which asks this Court, among other things, to conditionally certify the following collective:

> All current and former hourly, non-exempt warehouse employees of Defendant whose payroll records reflect that they worked forty (40) or more hours in any workweek during the three (3) years preceding the filing of this Motion [January 12, 2022] and continuing through the final disposition of this case ("FLSA Collective" or "FLSA Collective Members").

(Pl.'s Mot., ECF No. 16.) Sygma opposes conditional certification in-full. (Def.'s Resp., ECF No. 22.)

**II.**

Section 207 of the FLSA requires private employers to pay all non-exempt, hourly employees who work more than forty hours a week a rate of "one and one-half times" their regular pay rate for every additional hour they work. 29 U.S.C. § 207. If an employer fails to provide this overtime pay, its effected employees may collectively sue to recover it, so long as they are "similarly situated." 29 U.S.C. § 216(b).

In this circuit, certification of a FLSA collective generally proceeds in two stages: conditional certification (also known as the "notice" stage) and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). At the first stage, district courts merely seek to determine whether the grounds for the movant's FLSA claim are plausible enough to

---

[3] This includes: Alexander Aragon, Beau Arias, Mariquike Boykins, Myson Connelly, Rickey Forthenberry, Joshua Hurst, TeJuan Jackson, Michael Lawrence, Brian McCarty, Daniel Pacheco, Alexandro Sandoval, Michael Morrow (who, as noted, is now a named plaintiff), Troy Lobato, Demetrius Walker, and Jose Carlos Rodriguez. (See ECF Nos. 16, 19, 20, 21, 25, 32.)

3

warrant sending notice to potential members of his or her putative collective. *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015). To meet this burden, the plaintiff must, at the very least, make a "modest factual showing" that he or she and the potential members of his or her putative collective "were victims of a common policy or plan that violated the [FLSA]." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (quoting *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)).

Because this "modest" showing often must be made before any discovery has occurred, courts usually steer clear of weighing the merits of an FLSA movant's claim. *See, e.g.*, *Waggoner v. U.S. Bancorp.*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (reiterating the notion that "a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility" at the conditional certification stage) (citation omitted). So too are they "fairly lenient" in assessing whether the movant has met his or her "modest" burden. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer*, 454 F.3d at 547). And absent a particularly weak showing, these factors "typically" lead district courts to grant conditional certification. *Comer*, 454 F.3d at 547.

### III.

Sygma launches a variety of arguments against conditional certification. In the main, it contends Plaintiff has "presented insufficient evidence to support nationwide conditional certification" and "failed to identify a nationwide policy that violates the FLSA." It argues further that Plaintiff has not shown that he and his co-parties' "preliminary and postliminary activities were integral and indispensable" to their "principal" job activities, and that there are "no facts supporting Plaintiff's claims that *all* warehouse associates' meal breaks were interrupted with

substantive work." For all of these reasons, Sygma asserts Plaintiff has failed to meet the "modest burden" that conditional certification entails. The Court disagrees.

### A. Plaintiff Has Met His "Modest Burden"

Plaintiff, according to Sygma, has failed to demonstrate that it subjects its "warehouse associates" to a company-wide, FLSA-violating "policy or plan," as (1) neither Plaintiff nor the seven Opt-In Plaintiffs who submitted affidavits in support of his conditional certification motion "identifies a single person—let alone a manager or supervisor—who instructed them" to do "off-the-clock" work, (2) Plaintiff has only submitted affidavits from "associates who worked at [] five of SYGMA's 14 warehouses," and (3) neither Plaintiff nor his co-parties specifically identify "any other associate in the warehouse at which they worked" who also performed "off-the-clock" work. (Def.'s Resp., ECF No. 22 at PageID #215-16, 238-40.) Sygma further relies, among other things, on the fact its "written policies expressly prohibit any off-the-clock work, including the work Plaintiff and the declarants allege they performed off-the-clock." (*Id.* at PageID #231.)

All of these points fall short. As alluded, Plaintiff has presented sworn declarations from eight current or former non-exempt, hourly "warehouse associates" employed by Sygma across five states,[4] some of whom fulfilled different roles (*e.g.*, as "pickers" "loader" or "selectors"), but virtually all of whom aver, among other things, that they:

1. were (or are) "required" to wear certain PPE while on the warehouse floor and perform various other "pre-shift job duties" (*e.g.*, gathering "necessary" electronic equipment)
2. were "instructed" by SYGMA to arrive to work "before the scheduled starts" of their shifts—usually between thirty-to-fifteen minutes early—to don that PPE and perform other "pre-shift duties"
3. were not "on the clock" during the performance of these "pre-shift" duties, nor when they performed various "post-shift job duties" (*i.e.*, doffing their PPE and returning wearable equipment)

---

[4] These include warehouses in Columbus, Ohio; Lancaster, California; Danville, Illinois; Charlotte, North Carolina; and Kansas City, Missouri. (*See* Pl.'s Ex. B-H, ECF Nos. 16-2, 16-3, 16-4, 16-5, 16-6); (Pl.'s Ex. 1, ECF No. 21-1.)

5

4. were "required" to take "daily 30-minute meal break[s]" that were often impeded by (a) their need to doff their PPE and various other equipment and/or (b) the need to perform other "job duties" (*e.g.*, "finding a missing pallet, completing an assignment," or other "substantive" work)

5. have "observe[d], witnesse[d], work[ed] alongside of, and [spoken] with other warehouse employees at SYGMA that have/had these same policies and/or practices applied to them," resulting in them "not being paid overtime" compensation.

(*See* Pl.'s Ex. B-H, ECF Nos. 16-2, 16-3, 16-4, 16-5, 16-6); (Pl.'s Ex. 1, ECF No. 21-1.)

These statements, at this juncture, are enough to "plausibly" establish a company-wide "policy" or "practice" of not compensating "warehouse associates" for (1) the donning and doffing of functionally necessary equipment and (2) missed or interrupted "meal breaks." The mere fact Plaintiff and his affiants have yet to specifically name the managers who "instructed" them to perform this alleged off-the-clock work, or any co-worker who was subjected to the same practice, does not meaningfully undermine that conclusion, as that level of granularity is simply not required to meet the "lenient" standard for conditional certification. *See Miller v. HG Ohio Employee Holding Corp.*, No. 2:21-cv-3978, 2022 WL 2526818, at *6 (S.D. Ohio July 7, 2022) (granting conditional certification where plaintiffs declared they were personally "aware" of fellow employees being subjected to the same FLSA-violating policy); *Sisson v. OhioHealth Corp.*, Case No. 2:13-cv-517, 2013 WL 6049028, at *1 (S.D. Ohio Nov. 14, 2013) (granting conditional certification despite the plaintiff's failure to "submit[] affidavits from [other] potential plaintiffs" or "identif[y] any proposed plaintiffs by name"); *Arocho v. Crystal Clear Bldg. Servs., Inc.*, No. 1:12-cv-2186, 2013 WL 1855978, at *3 (N.D. Ohio Apr. 20, 2013) (granting conditional certification where plaintiffs declared "that fellow employees, personally known to them, suffered the same FLSA violations). Nor is Plaintiff required to present testimony from current or former "associates" of *every* or even *most* Sygma warehouses to "plausibly" establish the existence of a company-wide, FLSA-violating policy. As Plaintiff correctly notes, "courts in this circuit

6

traditionally do not require a FLSA plaintiff 'to come forward with some threshold quantity of opt-in plaintiffs' to obtain conditional certification." *Miller*, 2022 WL 2526818, at *6 (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011)). And there is no "'magic number' of sworn declarations that a plaintiff must submit to prevail at the 'notice stage.'" *Id.* "Indeed, on several occasions, this Court has found a single declaration to be enough." *Id.* (collecting cases).

Sygma's scrutiny of the breadth of Plaintiff's affidavits is, accordingly, inapposite. And while it is true Plaintiff has not presented affidavits that speak to the pay practices of "64% of SYGMA's warehouses," that does not undermine what he *has* offered: testimony which speaks to the existence of the same (or highly similar) unlawful pay practices at five Sygma warehouses which, in their totality, span the country. That in and of itself "plausibly" suggests those practices emanate from a "centralized" policy or plan—one that dictates the pay practices of *all* Sygma warehouses. *Id.* (citing *Jowers v. NPC Int'l, Inc.*, Case No. 13-1036, 2016 WL 7238963, at *6 (W.D. Tenn. Dec. 13, 2016)).

Sygma's reliance on its own written pay policies is similarly misplaced. For one, the mere existence of a written policy prohibiting off-the-clock work says nothing about whether that policy was actually enforced or followed. And in any event, at this stage, Sygma cannot use these polices to factually undercut Plaintiff's FLSA claims. *See Miller*, 2022 WL 2526818, at *6 (noting that "[o]nly those [arguments] which attack the facial sufficiency of Plaintiffs' allegations and affidvaits—not their accuracy—will be considered" at the conditional certification stage); *accord Waggoner*, 110 F. Supp. 3d at 765.

Indeed, Sygma dedicates a considerable portion of its briefing hashing out numerous other merits-based arguments—*e.g.*, that the members of Plaintiff's putative collective cannot be

7

"similarly situated" because their specific "job duties" and "wearable" equipment differ, or that there is "no evidence" their "preliminary and postliminary" duties were "integral and indispensable" to their jobs. But all of these contentions, while "potentially meritorious at some point," are "premature" for the inquiry at hand. *Deloney v. SK Food Group, Inc.*, No. 2:21-cv-892, 2021 WL 8651749, at *3 (S.D. Ohio Dec. 20, 2021); *Miller*, 2022 WL 2526818, at *6; *Ford v. Carnegie Mgmt Servs., Inc.*, Case No. 2:16-cv-18, 2016 WL 2729700, at *2 (S.D. Ohio May 11, 2016). Thus, they cannot (and will not) factor into the equation.

Plaintiff, in sum, has met the "modest burden" that conditional certification entails. And to the extent Sygma disagrees, it is welcome to re-raise its arguments at the final certification stage, *after* limited discovery has ensued.

### B. Notice

Even assuming conditional certification is warranted, Sygma contends Plaintiff's proposed notice is "defective" and "must be revised." It focuses its attention on two particular issues: (1) Plaintiff's request for a ninety-day opt-in period, which Sygma asserts is "not appropriate," and (2) Plaintiff's request that notice "be sent to all current and former warehouse associates who worked at least forty hours [for Sygma] beginning January 12, 2019"—*i.e.*, three years from the day Plaintiff moved for conditional certification. In Sygma's view, this proposed "look-back" period disregards the applicable statute of limitations for the FLSA claims at bar, and should instead begin "three years prior to the date of approval of [Plaintiff's proposed] notice." And on that point, and that point only, the Court agrees.

### i. Plaintiff's Proposed Opt-In Period

Sygma's first argument is not a novel one. And as of recent, it has not fared well in this Court. *See Miller*, 2022 WL 2526818, at *8-9 (affirming plaintiff's proposed 90-day opt-in period because "limiting the notice period to forty-five days would not 'moot or vitiate'" the claims of those employees who fail to opt-in); (*Shiflet v. Healthcare Ventures of Ohio, LLC* ("*Shiflet*"), No. 2:20-cv-3428-EAS-KAJ, ECF No. 19.) That is because "[t]here is no hard and fast rule controlling the length of FLSA notice periods," as "[c]ourts in this District have approved opt-in period ranging from forty-five to ninety days." (*Shiflet*, ECF No. 19 at PageID #238) (quoting *Ganci v. MBF inspection Servs., Inc.*, No. 2:15-cv-2959, 2016 WL 5104891, at *2 (S.D. Ohio Sept. 20, 2016)). Here, Sygma—relying on two Southern District of Ohio cases decided roughly twelve years apart—argues that a forty-five-day period would be "consistent with this Court's precedent." (Def.'s Resp., ECF No. 22 at PageID #242.) But it does not offer any substantive reason why a forty-five-day period is actually preferable, or otherwise acknowledge the extensive line of cases where a ninety-day period sufficed.[5]

Thus, the Court, as it has previously, will "err on the side of inclusivity." *Miller*, 2022 WL 2526818, at *9. Plaintiff's proposed ninety-day opt-in period stands.

### ii. Plaintiff's Proposed "Look-Back" Period

Sygma's second argument is more persuasive. It is well-settled that the applicable statute of limitations for "willful" violations of the FLSA—which Sygma is accused of here—is three years. And as Sygma notes, courts in this circuit "have found that class certification is

---

[5] *See Waters v. Pizza to You*, LLC, No. 3:19-cv-372, 2020 WL 1129357 (S.D. Ohio Mar. 9, 2020); *Godsey v. Airstream, Inc.*, No. 3:19-cv-107, 2020 WL 502550, at *5 (S.D. Ohio Jan. 31, 2020); *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 WL 2389721, at *8 (S.D. Ohio May 25, 2018); *Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-CV-675, 2017 WL 3437564, at *6 (S.D. Ohio Aug. 10, 2017; *Myers*, 2016 WL 11501744, at *2; *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, at 1075–76 (S.D. Ohio 2016) (noting courts' "overwhelming acceptance of 90-day opt-in periods"); *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL 853234, at *1 (S.D. Ohio Feb. 26, 2015).

9

appropriately limited to three years prior to the date of approval of notice." *Crescenzo v. O-Tex Pumping, LLC*, No. 15-cv-2851, 2016 WL 3277226, at *5 (S.D. Ohio June 15, 2016); *see also Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 897 (S.D. Ohio 2016). This Court cannot see why it should stray from that principle here. To do otherwise would needlessly risk inviting individuals who lack timely FLSA claims to join Plaintiff's putative collective. And Plaintiff offers no persuasive reason to hold otherwise.

Indeed, Plaintiff concedes that his proposed "look-back" period errs "on the side of over-inclusivity[.]" But this, he contends, "is far better than risking an additional lawsuit because a putative collective member was improperly omitted from receiving notice in this case." Plaintiff, however, does not explain how applying this circuit's traditional "limit[s]" on class certification risks "omitting" the distribution of notice to anyone with a colorable FLSA claim. At most, it will insulate Plaintiff's putative collective from individuals with unviable (*i.e.*, time-barred) causes of action. That is a fair thing for both Sygma and this Court to seek out.[6]

Plaintiff disagrees, primarily for one reason: the potential for those with expired claims to receive equitable tolling. And as he puts, such a consideration has motivated this Court to approve a potentially "overly" inclusive "look-back" period before—specifically, in *Smyers v. Ohio Mulch Supply, Inc.* (*See Smyers v. Ohio Mulch Supply, Inc.*, No. 2:17-cv-1110-ALM-CMV, ECF No. 39) (Marbley, J.) There, the defendants moved this Court to partially reconsider its previous order granting conditional certification—namely, by changing the plaintiff's approved "look-back" date (December 18, 2017) to the day her putative FLSA collective was conditionally certified (January

---

[6] Plaintiff asserts further that Sygma "risks nothing" by allowing "inevitably improper members" to join his putative collective, as those individuals, on Sygma's motion, could eventually be dismissed. (Pl.'s Reply, ECF No. 23 at PageID #322.) This point is unpersuasive. For one, it does not account for the time, energy, and resources that Sygma (and this Court) would invariably need to spend identifying and dismissing those "improper members." Nor does it acknowledge the confusion those individuals would likely endure.

4, 2019). (*Id.*) As Sygma does here, the defendants argued this maneuver would mitigate the risk of having individuals with time-barred claims opt-in to the *Smyers* plaintiff's putative collective. (*Id.*) The Court, however, denied defendant's request for reconsideration, noting specifically that the defendants had "waived this objection . . . in prior briefing." (*Id.* at PageID #420.) In passing, the Court acknowledged the *Smyers* plaintiff's counterargument that those who improperly joined her putative collective (*i.e.*, with time-barred claims) *could* receive "equitable tolling" down the line. (*Id.*) Nevertheless, it expressly declined to offer any "opinion" on the issue, as it had not been briefed. (*Id.*)

Plaintiff here does not account for any of this context in his own briefing. He simply contends that *Smyers* warrants in favor of approving a potentially "over-inclusive" "look-back" period, as "equitable tolling" *might* become "relevant or necessary" later on.[7] (Pl.'s Reply, ECF No. 23 at PageID #322.) But *Smyers*, as far as this Court can tell, does no such thing. At no point does it question this circuit's traditional practice of limiting class certification to the "three years prior to the date of approval of notice." *Crescenzo*, 2016 WL 3277226, at *5; *see also Myers*, 201 F. Supp. 3d at 897; *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015). It simply declined to "reconsider" an argument that the defendants waived. And here, unlike there, Sygma has not waived such an argument.

Thus, in line with traditional practice, the "look-back" period for Plaintiff's distribution of notice shall span the three years preceding the date of this Opinion and Order. *See Myers*, 201 F. Supp. 3d at 897; *Crescenzo*, 2016 WL 3277226, at *5. Plaintiff shall revise his proposed notice distribution and discovery plans, as well as his proposed Notice and Consent Forms, accordingly.

---

[7] Here, as in *Smyers*, there has been no briefing on the issue of equitable tolling. Thus, the Court will not opine on it.

## IV.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Conditional Certification (ECF No. 16), and **CONDITIONALLY CERTIFIES** the following putative FLSA collective:

> All current and former hourly, non-exempt warehouse employees of Defendant whose payroll records reflect that they worked forty (40) or more hours in any workweek during the three (3) years preceding the date of this Court's Opinion and Order granting conditional certification through the final disposition of this case.

To the extent they are amended to comport with this putative class definition, the Court **CONDITIONALLY APPROVES** Plaintiff's proposed discovery and notice distribution plans (*id.* at PageID #128), as well as his proposed Notice and Consent forms (Pl.'s Ex. A & B, ECF No. 16-1).

This case shall remain open.

**IT IS SO ORDERED.**

**9/23/2022**          **s/Edmund A. Sargus, Jr.**
**DATE**         **EDMUND A. SARGUS, JR.**
        **UNITED STATES DISTRICT JUDGE**